UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIMBERLY B.,[1] | Case No. 3:22-cv-00436-YY |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

YOU, Magistrate Judge.

Plaintiff Kimberly B. challenges the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings consistent with this decision.

STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her application date of September 3, 2019. Tr. 18. At step two, the ALJ determined plaintiff suffered from the following severe impairments: degenerative disc disease with lumbar radiculopathy and stenosis and right peroneal axonal neuropathy. *Id*. The ALJ recognized other impairments in the record, i.e., a history of thyroid cancer, migraines, asthma, status post hip

arthroscopy and mild osteoarthritis of the hips, and a positive nerve conduction study for carpal tunnel in April 2016, but the ALJ concluded these impairments were non-severe. *Id*. at 18-19.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*. at 20. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 CFR 416.967(b) with the exceptions that she could (1) frequently climb ramps and stairs, (2) occasionally climb ropes, ladders, and scaffolds, (3) frequently stoop, crouch, kneel, and occasionally crawl, (4) occasionally reach overhead bilaterally, and (5) frequently finger and handle with the right upper extremity. *Id*. at 21. The ALJ also concluded that plaintiff should have no exposure to workplace hazards or vibration and should be able to change positions between sitting and standing in thirty-minute intervals. *Id*. at 21-22.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. *Id*. at 27.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including storage facility rental clerk, office helper, and collator operator. *Id*. at 27-28. Thus, the ALJ concluded plaintiff was not disabled. *Id*. at 28.

## DISCUSSION

Plaintiff argues that the ALJ: (1) erroneously assessed the medical opinions of Drs. Brown, Wiggins, Buskirk, and Kessler, and (2) improperly discounted her subjective symptom testimony. Pl. Br. 1. Plaintiff also asks this court to consider new medical evidence presented to the Appeals Commission after the hearing. Pl. Br. 9.

I.  **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

    A.    **Objective Medical Evidence**

The ALJ rejected plaintiff's subjective symptom complaints because they were not consistent with the objective medical evidence. Tr. 22-25. In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with another permissible reason, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

The ALJ provided valid reasons for rejecting plaintiff's subjective symptoms complaints on several grounds. For instance, the ALJ recognized that, while plaintiff reported "significant right upper extremity symptoms, the record does not document reduced grip strength or observed difficulty with handling or fingering." Tr. 24. The ALJ reasoned that plaintiff's "often normal upper extremity strength (2F/27; 5F/55, 166) . . . and shoulder range of motion (7F/13), as well

as her lack of grip weakness or grip or fingering abnormality on exam, do not support additional limitations." Tr. 25.  The ALJ also did not include a cane requirement; while plaintiff reported using a cane for balance, the ALJ noted several examinations where plaintiff's gait, stance, balance, and strength were normal without a cane, and a cane was never prescribed.  Tr. 22-25.  The ALJ cited medical records to support these conclusions, and the ALJ's interpretation of the records is reasonable.

However, the ALJ erred in discounting plaintiff's complaints of pain without further explanation.  The ALJ recognized that plaintiff reported pain with repetitive movement of her right arm and shoulder, which was her dominant side, and constant hip pain that went down into her foot.  Tr. 22.  Plaintiff could sit for 10-15 minutes with a pillow behind her back, but had to lie down after that due to radiating hip and leg pain.  *Id*.  Plaintiff used a heating pad for pain, so much so that her doctors noted skin changes from constant use.  *Id*.; Tr. 331.  Plaintiff described her lower back pain as "stabbing," with sudden "lightning strikes" of radiating pain when she tried to lift anything heavy or sit for a few minutes.  Tr. 22.  Her ability to twist, turn, and bend was limited by pain and stiffness, and she had to take breaks when brushing her teeth, washing her hair, and cooking, to avoid triggering pain.  *Id.*  The pain also affected plaintiff's ability to focus.  *Id.*

Plaintiff was prescribed gabapentin and Percocet, a narcotic, for "moderate to severe pain."  Tr. 645, 775.  Records show plaintiff's pain was "stable" on Percocet, Tr. 439, and it was prescribed on an "as needed" basis.  Tr. 592.  Plaintiff was cautioned to "use [Percocet] sparingly."  Tr. 644; *see also* 472 ("adv to limit percocet").  However, plaintiff testified that her pain was so severe that she needed to use Percocet multiple times a day.  Tr. 56; Tr. 473 (chart

note describing Percocet use 2-3 times per day); Tr. 645 ("using Percocet more often, requests refill").

The ALJ recognized that plaintiff had undergone numerous treatments for pain, including narcotic medication:

> In terms of treatments, the claimant was prescribed pain medication, muscle-spasm medication, nerve pain medication, and muscle relaxants, including Neurontin, Celebrex, methocarbamol, metaxalone, acetaminophen, oxycodone, oxycodone-acetaminophen, cyclobenzaprine, pregabalin, and Cymbalta. 3F/71-72. Prior to the relevant period, she attended physical therapy, and received SI and right shoulder trigger point injections. 2F/26; 5F/43.

Tr. 24. The ALJ determined that plaintiff's "reduced right hip range of motion . . . , occasional antalgic gait . . . , paraspinal and sacroiliac tenderness . . . , 4+/5 bilateral hip strength . . . , and decreased right lower extremity sensation . . . support a limitation to light work" with restrictions surrounding use of stairs, ladders, certain movements, and exposures to vibrations or hazards, as well as the ability to switch from sitting to standing every thirty minutes. Tr. 25. The ALJ noted that "[t]hese limitations are designed to accommodate neck, back, and right shoulder pain and stiffness, and avoid exacerbating the claimant's symptoms, as well as avoid injury due to pain or stiffness while climbing around hazards." Tr. 25.

But these limitations do not address the chronic and debilitating pain that plaintiff had described. And while the ALJ cited to plaintiff's multiple treatments for pain, the ALJ did not explain how the objective medical evidence contradicts plaintiff's claim that she suffered from pain so extreme that it required her to use narcotics multiple times a day and prevented her from working. It is possible that the ALJ intended to discount plaintiff's complaints of pain based on her normal examination findings, including strength and flexing tests; however, if so, this reasoning is not clearly stated in the decision. Moreover, it is not reasonable for an ALJ to disbelieve a plaintiff's reports of pain based on normal strength where the strength tests reveal

7 – OPINION AND ORDER

pain symptoms on exertion. *Saenz v. Astrue*, No. CV08-543-TUCCKJJCG, 2010 WL 77305, at *8 (D. Ariz. Jan. 7, 2010). Here, plaintiff reported major and moderate pain during lumbar flexing, bending, and extending. Tr. 285. The record elsewhere shows plaintiff resisted hip flexion and abduction without pain, Tr. 329, but at the same time, she was prescribed pain medications, including a narcotic. In any event, it is unclear from the ALJ's decision why plaintiff's complaints of debilitating pain were rejected, and the case must be remanded for that analysis.

### B.     Activities of Daily Living

The ALJ also rejected plaintiff's subjective symptom complaints based on her activities of daily living. An ALJ may discount a plaintiff's symptom testimony based on activities of daily living to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ noted plaintiff was "limited to some degree" but her activities and record did "not support that the claimant was limited to the extent alleged." Tr. 27. In support, the ALJ made the following observations:

> The claimant's activities of daily living are consistent with the above residual functional capacity assessment. She was able to drive once or twice a week, shop, cook, vacuum, do light household chores, and do laundry. While she reported taking breaks, she was able to handle her own grooming and hygiene. Her ability to handle her own grooming and hygiene, as well as regularly drive, does not support greater handling, fingering, or reaching limitations, as these activities involve handling and fingering (for example, of a toothbrush) and forward reaching (the steering wheel). Her ability to do chores and shop does not support additional lifting and carrying limitations, as these activities involve lifting (of laundry and groceries). Cooking, shopping, and vacuuming both involve sustained standing and walking, which is consistent with the above light exertional level with the option to change position between sitting and standing in 30 minute intervals. Her ability to do laundry and shop does not support additional postural activities, as these activities involve stooping (to load and unload laundry, and pick up groceries). The

claimant's activities of daily living do not support a greater degree of exertional restriction.

Tr. 25.

Many of the cited activities are taken out of context or are consistent with plaintiff's testimony. For example, plaintiff testified that her driving, cooking, and other household activities were all severely limited by pain, causing her to be able to engage in these activities for only a few minutes and sometimes requiring medications or hours of lying down on a heating pad afterwards. Tr. 22, 48-50. Plaintiff's ability to handle her grooming, such as using a toothbrush, was limited by needing to shake out her hands every few minutes to avoid pain. Tr. 22, 53-54. Plaintiff also needed a family member go with her to the store and help with many activities, such as putting away laundry, and described stabbing, radiating lower back pain "when she tried to lift anything heavy, or sit for more than a few minutes." Tr. 22, 49, 52, 227. Thus, plaintiff's activities of daily living do not contradict her allegations of disabling symptoms and limitations, and therefore do not constitute a basis for rejecting her subjective symptom testimony. *Vertigan v. Halter*, F.3d 1044, 1050 (9th Cir. 2001) (holding "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

## II.   Mental Health Impairments

Plaintiff asserts the ALJ's paragraph B analysis is flawed because the ALJ failed to consider "her reported symptoms, her psychological history, her medications, and descriptions of how she functioned in therapy." Pl. Br. 24.

The ALJ observed that plaintiff was diagnosed with major depressive disorder and PTSD. Tr. 19. The ALJ then examined the four paragraph B criteria, and pointed to portions of the

9 – OPINION AND ORDER

record to support the conclusion that plaintiff had no limitations or only mild limitations in the four areas. However, as plaintiff observes, the ALJ made no mention of her multiple prescribed medications for depression and anxiety, including Xanax, Lexapro, trazodone, and hydroxyzine, or that she suffered from "a lot of anxiety" and panic attacks (Tr. 439), was "struggling," had no appetite, and had insomnia. Tr. 451. Plaintiff also had passive suicidal thoughts (Tr. 723) and a fear of dying. Tr. 451; *see* Tr. 723 ("I stay alive because I don't want to hurt my family."). Plaintiff described that her anxiety interfered with her social activities and was not relieved by medication. Tr. 452. She further described that she had a "lot of depression and anxiety" that "gets in the way of [her] functioning." Tr. 697, Tr. 720. On more than one occasion, medical records indicate that plaintiff's "symptoms cause clinically significant distress in important areas of function." Tr. 620, 736.

The ALJ's paragraph B determination is reviewed for substantial evidence. 42 U.S.C. § 405(g). When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (recognizing an ALJ "need not discuss *all* evidence presented to her") (emphasis in original). As the Ninth Circuit has explained, an "ALJ is not required to discuss evidence that is neither significant nor probative." *Howard*, 341 F.3d at 1012. However, an ALJ "must explain why 'significant probative evidence has been rejected.'" *Vincent*, 793 F.2d at 1395 (citation omitted). Here, the ALJ failed to discuss significant probative evidence, including plaintiff's prescribed medications, her symptoms, and records indicating that her "symptoms cause clinically significant distress in important areas of function."

Moreover, 20 C.F.R. § 404.1545(a)(2) provides that, in determining the RFC, "[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'" *See also Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) ("Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC."). Thus, even if the ALJ had properly concluded that plaintiff's mental impairments were non-severe, they must be factored into the RFC, which the ALJ failed to do in this case.

**III,    New Evidence**

The ALJ held a hearing on February 19, 2021, and issued a decision on April 15, 2021. Thereafter, plaintiff presented new evidence to the Appeals Council, consisting of MRIs conducted on March 20, 2021 (Tr. 33-36) and June 7, 2021 (Tr. 8-9). Plaintiff argues this new information "undermines the reviewing physicians' findings" and thus the ALJ's decision. Pl. Br. 11.

Under 42 U.S.C. § 405(g), to remand a case in light of new evidence, "the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). "To be material under section 405(g), the new evidence must bear 'directly and substantially' on the matter in dispute." *Id.* (citation omitted). The plaintiff "must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Id.*

Good cause is demonstrated by showing that the new evidence was unavailable earlier. *Id.* at 463. However, "[a] claimant does not meet the good cause requirement by merely

obtaining a more favorable report once his or her claim has been denied." *Id.* "The claimant must also establish good cause for not having sought the expert's opinion earlier."[2] *Id.*

A critical question here is whether the Appeals Council considered the new evidence or only looked at it. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). But if "the Appeals Council only looked at the evidence, and determined it did not meet the standard for consideration," then "the new evidence did not become part of the record, and [the court] may not consider it." *Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) (citing 20 C.F.R. § 416.1470(b), and *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003)).

The Appeals Council did not exhibit either the March 20, 2021 or June 7, 2021 MRI reports. Tr. 5. With respect to the June 7, 2021 MRI report, the Appeals Council's decision reflects it only looked at the evidence and found it did not relate to the period at issue:

> The Administrative Law Judge decided your case through April 15, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not

---

[2] Additionally, "SSA regulations permit a claimant to submit additional evidence to the Appeals Council if the claimant shows good cause for not having submitted it earlier." *White v. Kijakazi*, 44 F.4th 828, 835–36 (9th Cir. 2022) (citing 20 C.F.R. § 404.970(b)). The regulations contain a list of factors that constitute good cause. *See* 20 C.F.R. § 404.970(b). "When good cause is shown, regulations provide that the Appeals Council will review a case based on additional evidence submitted to the Council for the first time if the evidence is 'material,' it relates to a time period on or before the ALJ's decision, and 'there is a reasonable probability that the additional evidence would change the outcome of the decision.'" *Id.* (citing 20 C.F.R. § 404.970(a)(5)).

To be clear, however, "[t]he propriety of the Appeals Council's denial of plaintiff's request for review is not a proper subject of this court's review." *McQueen v. Berryhill*, No. 2:18-CV-00511 AC, 2019 WL 1923232, at *5 (E.D. Cal. Apr. 30, 2019) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner.").

12 – OPINION AND ORDER

>affect the decision about whether you were disabled beginning on or before April 15, 2021.

Tr. 2; *see Guzman v. Kijakazi*, No. 1:20-CV-0514 JLT, 2021 WL 6062645, at *3 (E.D. Cal. Dec. 22, 2021) (holding that, where Appeals Council's decision stated, "This additional evidence does not relate to the period at issue," it only looked at the evidence and did not consider it); *Ruth v. Berryhill*, No. 1:16-CV-0872-PK, 2017 WL 4855400, at *9 (D. Or. Oct. 26, 2017) ("Thus, the new evidence submitted to the Appeals Council that was only *looked at* was not incorporated into the record because it did not relate to Ruth's disability claim and, therefore, is not subject to review by this Court.") (emphasis in original).  Plaintiff has not established good cause for failing to present this evidence earlier.  *See Mayes*, 276 F.3d at 462 (holding "[t]he claimant must . . . establish good cause for not having sought the expert's opinion earlier." *Id.*

The Appeals Council used different language with respect to the March 20, 2021 MRI report:

>We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not exhibit this evidence.

Tr. 2.

Some district courts have found that, where the Appeals Council's decision contained similar language, the Appeals Council merely looked at the new evidence.  *See Hensley v. Comm'r of Soc. Sec.*, No. 2:20-CV-1448-KJN, 2022 WL 891289, at *14 (E.D. Cal. Mar. 25, 2022) (holding identical language in Appeals Council's decision showed it only looked at the new evidence); *Victor A. v. Kijakazi*, No. 2:21-CV-07482-GJS, 2023 WL 2614510, at *3 (C.D. Cal. Mar. 23, 2023) (same); *Bispo v. Comm'r of Soc. Sec.*, No. 1:20-CV-01457-SAB, 2022 WL 1598563, at *4 (E.D. Cal. May 20, 2022) (same); *Matias v. Saul*, No. CV 19-00575 LEK-KJM, 2021 WL 531238, at *5 (D. Haw. Feb. 12, 2021) (same); *Sandra Marie M. v. Comm'r of Soc.*

13 – OPINION AND ORDER

*Sec.*, No. 2:18-CV-00353-RHW, 2020 WL 3183655, at *3 (E.D. Wash. June 15, 2020) ("Here, the Appeals Council did not consider the evidence, as it found that it did not show a reasonable probability that it would change the outcome of the ALJ's decision.").

Other courts have found this language either ambiguous or an indication that the Appeals Council considered the evidence, and remanded for further proceedings. *See Vahey v. Saul*, No. CV 18-00350-ACK-KJM, 2019 WL 3763436, at *10 (D. Haw. Aug. 9, 2019) ("At this point, the Court can only speculate whether the Appeals Council 'considered' the Pre-Decision Records. With this uncertainty, the Court sees remand as the only option, to allow the ALJ to reconsider the evidence under the relevant standards.") (citing *Mendez v. Comm'r of Soc. Sec.*, No. 17-cv-6824-CJS, 2019 WL 2482187, at *4 (W.D.N.Y. June 14, 2019)); *Franz v. Comm'r of Soc. Sec.*, No. 2:21-CV-583-KJN, 2022 WL 4537991, at *4 (E.D. Cal. Sept. 28, 2022) ("The undersigned construes this as indicating Dr. Vega's statement was in fact considered—otherwise the court cannot understand how the Council could have concluded the opinion would not have changed the outcome."); *Shelly C. v. Saul*, No. 2:20-CV-00201-FVS, 2021 WL 2653733, at *8 (E.D. Wash. June 25, 2021) ("This Court joins others in finding that it is not clear how the Appeals Council determined that the new evidence would not impact the outcome of the ALJ's decision while simultaneously not considering it and not associating it with the record.").

Here, the court "need not decide whether [the March MRI report] constitutes new evidence sufficient to remand the case pursuant to 42 U.S.C. § 405(g), because the court is remanding the case on other grounds." *Lockwood v. Carolyn W. Colvin*, No. 12-CV-00493-NJV, 2013 WL 1964923, at *11 (N.D. Cal. May 10, 2013). "Because the Court is reversing and remanding the ALJ's decision for the reasons set forth herein, the new evidence may be considered by the ALJ in the first instance on remand." *Danissa P. v. Comm'r of Soc. Sec.*, No.

14 – OPINION AND ORDER

2:19-CV-01993-BAT, 2020 WL 3264134, at *8 (W.D. Wash. June 17, 2020). This pertains to the June 7, 2021 MRI report as well. *See Vahey*, 2019 WL 3763436 at *10 (finding Appeals Council did not consider new evidence that post-dated the ALJ's decision but concluding that "further proceedings would be useful to allow the ALJ to evaluate the relevance and impact of the Post-Decision Records, if any."); *Baker v. Colvin*, No. 16-CV-00771-EMC, 2016 WL 5869944, at *4 (N.D. Cal. Oct. 7, 2016) ("Under well-established case law, evidence dated after an ALJ's decision can still be related to the period before the ALJ's decision.").

It is unnecessary and premature to reach the remaining issues presented in plaintiff's briefing.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED June 20, 2023.

                                                    /s/ Youlee Yim You
                                                    Youlee Yim You
                                                    United States Magistrate Judge